[No. 14740. Department One. October 1, 1918.]

W. R. DAVENPORT, *Respondent*, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, *Appellant*.[1]

CARRIERS — PASSENGER DEPOTS — REGULATIONS — REASONABLENESS. Railroads having the right at common law to enforce reasonable rules for the conduct of business, and the railroad commission having adopted no rules as to the time for keeping a company's station rooms open, as empowered by Rem. Code, § 8626-85, a passenger, in order to recover damages from a company's failure to keep its waiting room open between the hours of 4:30 and 8 a. m., must allege and prove that its rules providing therefor are unreasonable.

SAME—PASSENGER DEPOTS — ACTIONS FOR DAMAGES — DEFENSES— EVIDENCE. In an action for damages by a passenger through a railroad's failure to keep its waiting room open, the defendant, under a general denial, is entitled to prove that the closing was in accordance with its regularly established rules, and facts tending to show its reasonableness, including the fact that the public service commission had adopted no rule on the subject.

SAME—PASSENGERS—EJECTION—DAMAGES—MENTAL ANGUISH. The fact that a passenger was told that he would "have to get out of here," on closing a waiting room, is not sufficient to carry the case to the jury upon the issue of suffering mental anguish from insulting language.

DAMAGES—PERSONAL INJURIES — EXCESSIVE VERDICT. A verdict for $832 for damages through catching a cold is excessive, where the evidence showed nothing beyond the usual discomfort usually caused by such condition.

Appeal from a judgment of the superior court for Grant county, Hill, J., entered September 25, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Reversed.

[1]Reported in 175 Pac. 298.

*Geo. W. Korte* and *R. M. Dye,* for appellant.
*W. E. Southard,* for respondent.

TOLMAN, J.—The appellant is the owner of a railway running from Seattle through Warden, Washington, and eastward; and also of a connecting line which runs from Warden to Ruff, Washington, and other points.

The respondent, on January 31, 1917, purchased a ticket from the appellant's agent at Seattle which entitled him to transportation from Seattle to Ruff, Washington. On the evening of that day he boarded one of the appellant's trains at Seattle, upon which he was carried to Warden, where it was necessary for him to change trains. The respondent arrived at Warden on the main line passenger train at about 4:15 a. m. on February 1, 1917. The train on the branch line did not leave Warden until 8 a. m. The respondent left the main line train at Warden and went into the waiting room owned and maintained by the appellant, to await the departure of the train for Ruff. At that time the appellant employed to handle its business at the station at Warden two men. The day man worked from 8 a. m. until 5 p. m., when the night man came on duty, remaining from 5 p. m. until 6:30 p. m., when the depot and waiting room were closed, and were reopened again at 11 p. m., when the night man came on duty and kept open until 4:30 a. m., the depot being then closed until 8 a. m.

These hours of duty and of keeping open the waiting room were, it is claimed by the appellant, fixed by the rules and regulations promulgated by it some time before, and which were in full force and effect and posted on the blackboard in the waiting room where they could readily be seen.

At about 4:30 a. m. on the morning in question, while the respondent and one other person were in the wait-

ing room, the appellant's agent then in charge informed the respondent that he was about to close the depot and waiting room and that the respondent would have to leave and go to the hotel. At that time there were two hotels located in Warden, one about a block from the depot, and the other about two and one-half blocks from the depot, both of which were kept open so that any one might enter the office, but neither had a night clerk, and one entering the hotel would have to ring a bell provided, in order to receive attention.

At the time the appellant's agent informed the respondent that he must leave the waiting room as it was to be closed, the respondent claims to have shown the agent his ticket and informed him that he was a through passenger for Ruff, though this is denied by the agent. In any event, without any force or violence of any kind, and without any insulting or abusive language or conduct upon the part of the appellant's agent, the respondent vacated the waiting room upon the request or demand of the agent, and the door was locked. The respondent claims to have stood outside discussing the situation for a few moments with the other person who was ordered from the waiting room at the same time, and then to have gone to a nearby hotel where he received shelter until about 6:30 on the same morning. The weather was cold, the temperature being at about zero, and the respondent had no overcoat, and he says he was not dressed so as to remain exposed to the cold.

At about 6:30 a. m., the respondent voluntarily left the hotel, returned to the station, which was still locked, and remained there on the outside in the cold voluntarily for a considerable time before the arrival of the train upon which he was to become a passenger. He alleges that he contracted a severe cold and became sick and distressed, and suffered great physical pain

as a result of thus being denied shelter in the appellant's waiting room. In addition to claiming damages in the sum of $750 therefor, he asks further damages in the sum of $1,000 for mental pain and anguish suffered as a result of the alleged insulting and insolent manner in which he was ordered from the waiting room.

The case was tried to a jury, which returned a verdict in favor of the respondent in the sum of $832. The appellant moved for judgment notwithstanding the verdict and for a new trial, which motions being denied, the case is brought here on appeal.

Under the common law, railroad companies have the right to make and enforce rules and regulations for the conduct of their business, subject only to control by the courts as to the reasonableness of such rules and regulations; and with this limitation, a carrier of passengers has the right to make such reasonable rules and regulations as may seem fit and proper for the conduct of its business. 10 C. J. 650, and cases there cited.

In this state, by statute, Rem. Code, § 8626-85, the public service commission is empowered to adopt and issue rules and regulations covering, among other things, "the time that station rooms and offices shall be kept open." There is no allegation or proof that the public service commission, at the time complained of, had adopted any rule covering the time when the appellant's station room at Warden should be kept open. This tends toward a presumption that the appellant's rules and customary practice with reference thereto were reasonable, and that no action by the commission was required. It follows, therefore, that, in order to recover in this case, the respondent must have alleged and proved that the appellant's action in clos-

ing its waiting room between the hours of 4:30 and 8 a. m. on the morning in question was unreasonable.

Assuming that the complaint, liberally construed, does so charge, and that the respondent's evidence tends to so show, we think that, under the general denial of the answer, the appellant should have been permitted to prove that the closing of the waiting room at the time in question was in accordance with its regularly established rule, and to offer in evidence any facts tending to show the reasonableness of the rule, including the fact that the public service commission had adopted no rule governing the subject. And the jury should have been given instruction No. 2 proposed by the appellant.

We find no evidence in the record which justifies the submission to the jury of the question of whether or not the respondent suffered mental anguish and was damaged thereby. His own testimony fails to show any violence of word or act, or any insulting or abusive language used. We cannot hold that the mere statement by the appellant's agent, "You fellows will have to get out of here, I am going to lock up," even though respondent says, "I did not see why he should treat me like that; my feelings were hurt and I can't hardly explain how I did feel," is sufficient to carry this question to the jury. The appellant's motion to withdraw this question from the jury should have been granted.

The verdict should have been set aside as excessive upon the appellant's motion for a new trial. There is little if any evidence from which the jury might find that the respondent suffered loss of time or earning capacity; and a cold, even if severe, does not usually cause great suffering. The testimony in that respect shows nothing beyond the discomfort usually caused by such a condition. We can find no evidence in the

case which will sustain a verdict and judgment for more than a very inconsiderable amount.

The judgment of the court below will be reversed with instructions to grant a new trial.

MAIN, C. J., PARKER, MITCHELL, and FULLERTON, JJ., concur.